17 F.3d 1444
 30 U.S.P.Q.2d 1537
 NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
The NATIONAL RESEARCH DEVELOPMENT CORPORATION and British
Technology Group Limited, Plaintiffs-Appellants,
v.
VARIAN ASSOCIATES, INC., Defendant-Appellee.
 No. 93-1421.
 United States Court of Appeals, Federal Circuit.
 Jan. 26, 1994.
Rehearing Denied Feb. 23, 1994.
 
 Before LOURIE, Circuit Judge, COWEN, Senior Circuit Judge, and CLEVENGER, Circuit Judge.
 CLEVENGER, Circuit Judge.
 
 
 1
 The National Research Development Corporation and British Technology Group Limited (collectively, NRDC) appeal from the May 13, 1993, order of the United States District Court for the District of New Jersey,[1] holding all four claims of U.S.Patent No. 3,999,118 not anticipated under 35 U.S.C. Sec. 102(a) (1988) but nevertheless invalid under the public use bar of 35 U.S.C. Sec. 102(b) (1988). We affirm-in-part, vacate-in-part and remand.
 
 
 2
 * U.S.Patent No. 3,999,118 ('118 patent), entitled "Spectrographic Analysis of Materials," issued on December 21, 1976, to Hoult, who assigned his rights thereunder to NRDC. The subject matter of the '118 patent's four claims concerns a method and apparatus for eliminating, inter alia, systemic noise produced in a Nuclear Magnetic Resonance (NMR) spectrometer during sample analysis. Claims 1 and 3 of the '118 patent cover, respectively, an apparatus and method for utilizing a train of radio-frequency pulses, successive ones of which are in relative phase quadrature. In contrast, claims 2 and 4 respectively cover an apparatus and method for utilizing a train of radio-frequency pulses, successive ones of which are in phase opposition.
 
 
 3
 The invention resulted from the endeavors of Dr. David Hoult,[2] a graduate student at Oxford University, England, while under the supervision of his advisor, Dr. (Sir) Rex Richards. A patent application to Dr. Hoult's invention was filed in the United Kingdom on April 8, 1974. The patent application from which the '118 patent issued was filed on February 27, 1975, in the United States.
 
 
 4
 During the period of Dr. Hoult's development work, Dr. Richards attended an Experimental NMR Conference in the United States in April 1973. While travelling to the conference one morning, Dr. Richards had an informal, one-on-one conversation on a bus with Dr. Stejskal, a Monsanto Company research scientist. During that conversation, which took place without Dr. Hoult's knowledge or explicit permission, Dr. Richards disclosed the essence of Dr. Hoult's invention to Dr. Stejskal. It is undisputed, and the district court expressly found, that Dr. Richards at that time did not ask Dr. Stejskal to keep the information confidential, and did not inform him that either he or Dr. Hoult intended to file for a patent thereon. National Research, slip op. at 13-14.
 
 
 5
 Upon his return to Monsanto, Dr. Stejskal and his colleague, Dr. Schaefer (the Monsanto scientists), collaborated in incorporating Dr. Hoult's invention as disclosed by Dr. Richards into one of the NMR spectrometers in their Monsanto research laboratory. As the district court found, "by the summer of 1973, more than one year before the application for Hoult patent [sic] was filed in the United States," the Monsanto NMR spectrometer modified by the Monsanto scientists was using the subject matter of the '118 patent. Id. at 14. The Monsanto scientists then used this modified spectrometer as an analytical tool to determine, inter alia, whether the then-experimental herbicide "Roundup" was safe for release into the environment.
 
 
 6
 In 1989, NRDC filed suit against Varian Associates, Inc. (Varian) in the U.S. District Court for the District of New Jersey alleging infringement of its '118 patent. In response, Varian alleged that the '118 patent was invalid for anticipation, prior public use, obviousness, and failure to disclose the best mode, and was unenforceable due to NRDC's alleged inequitable conduct before the Patent and Trademark Office. The various invalidity theories were bifurcated from all other issues and were heard during a bench trial in February 1993. Thereafter, the district court concluded that the '118 patent claims were not anticipated by the 1971 article, J.D. Ellett, Jr., et al., Spectrometers for Multiple-Pulse NMR, in 5 Advances in Magnetic Resonance 117 (John S. Waugh ed., 1971). National Research, slip op. at 18-24. The court, however, held "the patent" invalid under the public use bar of 35 U.S.C. Sec. 102(b) because the Monsanto scientists were using the spectrometer in the usual course of Monsanto's business, without restriction, more than one year before the filing date of Dr. Hoult's patent application in the United States. Id. at 24-35, at 35. The court thus held invalid all four claims, and did not reach Varian's other theories for invalidating the '118 patent.
 
 II
 
 7
 35 U.S.C. Sec. 102(b) provides that an inventor shall not be entitled to patent his invention if "the invention was ... in public use ... in this country, more than one year prior to the date of the application for patent in the United States,...." Whether an invention was in public use within the meaning of section 102(b) is a question of law that this court reviews de novo. Manville Sales Corp. v. Paramount Sys., Inc., 917 F.2d 544, 549, 16 USPQ2d 1587, 1591 (Fed.Cir.1990). Factual findings underlying the district court's legal conclusion are, however, subject to the clearly erroneous standard of review. Id., 16 USPQ2d at 1591; Fed.R.Civ.P. 52(a). A conclusion that the public use bar invalidates a patent must be based on clear and convincing evidence, Manville Sales, 917 F.2d at 549, 16 USPQ2d at 1591, and must be drawn in light of the "totality of the circumstances," id. at 549, 16 USPQ2d at 1591; Moleculon Research Corp. v. CBS, Inc., 793 F.2d 1261, 1266, 229 USPQ 805, 808 (Fed.Cir.1986), cert. denied, 479 U.S. 1030 (1987). Thus, "the presence or absence of [an express confidentiality] agreement is not determinative of the public use issue." Id., 229 USPQ at 808.
 
 III
 
 8
 This court in In re Smith, 714 F.2d 1127, 218 USPQ 976 (Fed.Cir.1983), defined the public use of a claimed invention under section 102(b) as including "any use of that invention by a person other than the inventor who is under no limitation, restriction or obligation of secrecy to the inventor." Id. at 1134, 218 USPQ at 983 (citing Egbert v. Lippmann, 104 U.S. (14 Otto) 333, 336 (1881)).
 
 
 9
 On appeal, NRDC argues, inter alia, that the district court erred in concluding that the facts of this case evidence a prior public use, as defined by In re Smith, because the totality of the circumstances indicates that there was an "understanding" between Drs. Richards and Stejskal that the information was not to be disclosed to the public, and therefore that the information was provided under enough of a restriction to preclude a public use bar. Relying on W.L. Gore & Assocs., Inc. v. Garlock, Inc., 721 F.2d 1540, 220 USPQ 303 (Fed.Cir.1983), cert. denied, 469 U.S. 851 (1984), NRDC reasons that the district court therefore erred as a matter of law in placing undue emphasis on the absence of a restrictive or confidentiality agreement. We disagree.
 
 
 10
 There is ample evidence in the record to support the district court's factual finding that the information was disclosed to Dr. Stejskal without any restriction on use or dissemination. The "totality of the circumstances," even including describing the conversation on the bus as "private,"[3] simply does not support NRDC's position. Moreover, the mere fact that Drs. Richards and Stejskal had known each other for many years cannot of itself create the "understanding" of confidentiality that NRDC struggles to establish, especially since the NMR Conference was specifically designed to encourage intellectual discourse through the free disclosure of information. Thus, the unrestricted disclosure of the invention, coupled with use of that information in the ordinary course of business, renders that use public. See Electric Storage Battery Co. v. Shimadzu, 307 U.S. 5, 50 (1939).[4]
 
 
 11
 Moreover, use by only one member of the public, without that use informing other members of the public as to the true nature of the invention, is sufficient under Supreme Court jurisprudence to invalidate a patent under section 102(b) for prior public use. See, e.g., Egbert v. Lippmann, 104 U.S. (14 Otto) at 336 ("If an inventor ... gives or sells [the invention] to another, to be used by the donee or vendee, without limitation or restriction, or injunction of secrecy and it is so used, such use is public, even though the use and knowledge of the use may be confined to one person."). Thus, even assuming that only the Monsanto scientists had access to the modified spectrometer, and that others visiting the laboratory had no idea as to the true nature thereof, the Monsanto scientists' knowledge and use alone provide sufficient basis on which to invoke the statutory bar of section 102(b). Monsanto's internal policies concerning dissemination of information are to that extent irrelevant.
 
 
 12
 W.L. Gore is not contrary to this result. In that case, this court concluded that the facts did not support a public use bar because an entity entirely separate from the inventor, Cropper, had independently developed the subject matter of the subsequently issued patent and had kept it entirely secret from the public, even though it had been used in a commercial process. We reasoned:
 
 
 13
 As between a prior inventor who benefits from a process by selling its product but suppresses, conceals, or otherwise keeps the process from the public, and a later inventor who promptly files a patent application from which the public will gain a disclosure of the process, the law favors the latter.
 
 
 14
 721 F.2d at 1550, 220 USPQ at 310. The present case, however, does not involve a secret development of the patent's subject matter wholly separate from the patentee. Rather, the source of the information about the invention which led to the public use was indirectly the patentee himself. Under United States patent law, an inventor has the obligation to avoid public use of his invention more than one year before filing, in order to preserve his right to receive a patent thereon. See Moleculon Research, 793 F.2d at 1265, 229 USPQ at 808. This applies as much to the inventor's confidants as it does to the inventor himself. Thus, in order to avoid application of the public use bar of section 102(b), Dr. Richards, having free access to Dr. Hoult's invention, had to refrain from freely disclosing information concerning that invention. Since Dr. Richards failed to do so, Dr. Hoult failed to meet his obligation and the resulting public use of the invention invalidates NRDC's patent on the subject matter publicly used.[5]
 
 
 15
 This result furthers the important public policy of discouraging the removal of inventions from the public domain which members of the public justifiably have come to believe are freely available. King Instrument Corp. v. Otari Corp., 767 F.2d 853, 860, 226 USPQ 402, 406 (Fed.Cir.1985), cert. denied, 475 U.S. 1016 (1986); cf. Manville Sales, 917 F.2d at 549-50, 16 USPQ2d at 1591 ("[T]he policies or purposes underlying the on sale bar [of section 102(b) ], in effect, define it.") (quoting Envirotech Corp. v. Westech Eng'g, Inc., 904 F.2d 1571, 1574, 15 USPQ2d 1230, 1232 (Fed.Cir.1990)).
 
 IV
 
 16
 This does not end the matter, however, for the district court invalidated all four claims of the '118 patent. It is well settled that a party "challenging the validity of a claim ... must submit evidence supporting a conclusion of invalidity of each claim the challenger seeks to destroy." Shelcore, Inc. v. Durham Indus., Inc., 745 F.2d 621, 625, 223 USPQ 584, 586-87 (Fed.Cir.1984) (emphasis in original); see also W.L. Gore, 721 F.2d at 1549-50, 220 USPQ at 310; 35 U.S.C. Sec. 282 (1988). In the present case, it is undisputed that only the subject matter of claims 1 and 3 of the '118 patent was incorporated into the Monsanto spectrometer. Varian nevertheless argues that NRDC waived its right to object to invalidation of all four claims of the '118 patent because of NRDC's general references throughout the trial to "the Hoult invention," and that even if the issue was not waived, the subject matter of claims 2 and 4 is simply an obvious variation of that of claims 1 and 3, such that claims 2 and 4 are also barred by Monsanto's public use.
 
 
 17
 Considering the contexts in which the phrase "the Hoult invention" was used, and in light of the fact that it was established early at trial by Varian's own witnesses that only the subject matter of claims 1 and 3 was incorporated into the spectrometer, NRDC did not acquiesce to putting all of the claims in issue based solely on the Monsanto scientists' use of their modified spectrometer, and therefore has not lost its right to challenge the district court's actions on appeal.
 
 
 18
 Varian correctly argues that public use activity invalidating some claims of a patent under section 102(b) creates prior art that may support an obviousness-type invalidation of other claims within the same patent under 35 U.S.C. Secs. 102(b), 103. See In re Kaslow, 707 F.2d 1366, 1374, 217 USPQ 1089, 1095 (Fed.Cir.1983); In re Corcoran, 640 F.2d 1331, 1333-34, 208 USPQ 867, 869-70 (CCPA 1981) ("The fundamental principle [embodied in 35 U.S.C. Sec. 102(b) ].... applies not only to the precise matter disclosed by the events of [section] 102(b) but also to claimed inventions which would [have been] obvious from the matter disclosed by the events in the sense of [35 U.S.C.] Sec. 103.... [This] principle ... may be called a Secs. 102(b)/103 rejection since it finds its statutory base in both of those sections...."). Since an ultimate conclusion of obviousness rests on underlying factual findings, however, none of which was made by the district court at trial, we vacate the court's holding with respect to claims 2 and 4 and remand the matter for further proceedings.
 
 
 19
 Varian in essence argues, however, that we need not remand because the district court erred in finding that Ellett et al., supra, did not anticipate the '118 patent's four claims.[6] Having considered all of Varian's arguments on this issue, we conclude that the district court's finding on anticipation was not clearly erroneous. We therefore affirm the district court on this ground.[7] Remand is therefore necessary for proceedings consistent with this opinion.
 
 
 20
 Each party is to bear its own costs.
 
 
 
 [1]
 National Research Dev. Corp. v. Varian Assocs., Inc., Civ. No. 89-2459 (D.N.J. May 13, 1993)
 
 
 [2]
 Dr. David Hoult will be referred to throughout this opinion as Dr. Hoult, even though he had yet to receive his Ph.D. at the time of his invention
 
 
 [3]
 Dr. Stejskal testified that it was "private" only in the sense that it involved two persons, however
 
 
 [4]
 Indeed, as NRDC candidly notes, if there is lacking a confidential relationship between Drs. Richards and Stejskal--that is, if the transfer of information was unrestricted--then the public use bar applies
 
 
 [5]
 This case is thus easily distinguishable from Moleculon Research, in which the personal relationships and other surrounding circumstances were such that the inventor at all times retained control over the invention's use as well as over the distribution of information concerning it: "[The inventor] never ... permitted [the invention] used in a place ... [wherein] he did not have a legitimate expectation of privacy and of confidentiality.... None of the participants [in the alleged uses] had any basis for inferring that the [invention] was being given over by [the inventor] for their free and unrestricted use." 793 F.2d at 1265, 229 USPQ at 808. In the present case, however, Dr. Hoult did not at all times retain control over the distribution of information concerning his invention, as evidenced by Dr. Richards' unrestricted disclosure thereof to Dr. Stejskal
 
 
 [6]
 Contrary to NRDC's position, Varian, as the prevailing party, may argue any otherwise properly raised ground in support of the district court's judgment without filing a cross-appeal. See Datascope Corp. v. SMEC, Inc., 879 F.2d 820, 822 n. 1, 11 USPQ2d 1321, 1322 n. 1 (Fed.Cir.1989), cert. denied, 493 U.S. 1024 (1990)
 
 
 [7]
 Since the district court failed to reach the other alleged grounds for invalidating the '118 patent, we decline Varian's invitation to reach the other unadjudicated issues