106 F.3d 427
 41 U.S.P.Q.2d 1954
 NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
MUSCO CORPORATION; Musco Sports Lighting, Inc.,
Plaintiffs/Cross-Appellants,
v.
QUALITE, INC. d/b/a Qualite Sports Lighting, Inc.,
Defendants-Appellants.
 Nos. 96-1212, 96-1217.
 United States Court of Appeals, Federal Circuit.
 Jan. 17, 1997.
Rehearing Denied; Suggestion for Rehearing In Banc Declined
Feb. 27, 1997.
 
 Before MAYER, SCHALL, and, BRYSON, Circuit Judges.
 PER CURIAM.
 
 
 1
 Qualite, Inc. appeals the judgment of the United States District Court for the Western District of Michigan, Case No. 1-94-CV-592, holding that Qualite infringes method claims in three patents owned by Musco Corporation and Musco Sports Lighting, Inc. (Musco). Because the asserted claims are invalid for lack of enablement, 35 U.S.C. § 112 (1994), we reverse the judgment and vacate the permanent injunction.
 
 
 2
 A patent's specification must set forth "a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same". 35 U.S.C. § 112. Section 112 requires only an objective enablement; the invention needs to be sufficiently disclosed through illustrative examples or terminology to teach those of ordinary skill in the art how to make and how to use the invention as broadly as it is claimed. In re Marzocchi, 439 F.2d 220, 223, 169 USPQ 367, 369 (CCPA 1971). Although some experimentation on the part of the artisan is not fatal, Northern Telecom, Inc. v. Datapoint Corp., 908 F.2d 931, 941, 15 USPQ2d 1321, 1329 (Fed.Cir.1990) (the patent document need not be a production specification), either the experimentation must be routine, or the specification must give "a reasonable amount of guidance with respect to the direction in which the experimentation should proceed to enable the determination of how to practice a desired embodiment of the invention claimed." PPG Indus., Inc. v. Guardian Indus. Corp., 75 F.3d 1558, 1564, 37 USPQ2d 1618, 1623 (Fed.Cir.1996). Enablement is a question of law, which we review de novo, although there may be underlying factual issues, Moleculon Research Corp. v. CBS, Inc., 793 F.2d 1261, 1268, 229 USPQ 805, 810 (Fed.Cir.1986); Quaker City Gear Works, Inc. v. Skil Corp., 747 F.2d 1446, 1453-54, 223 USPQ 1161, 1166 (Fed.Cir.1984), to which deference would be due.
 
 
 3
 Musco alleges that Qualite infringes claim 14 of U.S. Patent No. 4,725,934 (the '934 patent), claims 1-3 of U.S. Patent No. 4,947,303 (the '303 patent), and claims 1, 3-5, 11 and 13 of U.S. Patent No. 5,075,828 (the '828 patent).* We use claim 14 of the '934 patent because most of the trial record has been developed around this claim and because in all relevant respects it is representative of the other claims in issue. Claim 14 reads:
 
 
 4
 A method for producing wide scale, composite lighting of desired and sufficient intensity, quality, and uniformity in and throughout a target space while selectively controlling, diminishing, or eliminating glare, spill light, and any dome or halo effect outside of the target space, said lighting being produced by one or more lamps mounted in reflector, comprising luminaire assembly units, comprising the steps of: determining the light producing characteristics of each luminaire assembly unit; determining the sufficient intensity and uniformity of light desired for the target space; determining the glare, spill light, and dome or halo effect problems, if any, for conventional wide scale lighting of the target space; producing wide scale composite lighting while at the same time controlling, diminishing, or eliminating selected wide scale lighting problems by selectively utilizing one or more light controlling steps comprising:
 
 
 5
 shielding a portion of the lamp;
 
 
 6
 positioning a reflector extension member on the reflector; and
 
 
 7
 altering the reflecting properties of the interior reflecting surface of the reflector.
 
 
 8
 Musco avers that its claimed invention comprises neither the apparatus used in the method nor the determining steps cited in the claims, when used alone or in combinations. Instead, it asserts that the essence of its claimed invention is the method of "selectively utilizing" one or more of the various apparatus to solve the problems identified by the determining steps. Qualite responds that Musco's claims include impermissible mental process steps, such as determining the lighting problems and selectively utilizing the accessories. Musco replies that Qualite's enablement challenge is merely a demand "that every detail of anything related to the invention or specification be disclosed in minutiae."
 
 
 9
 Musco is correct that disclosure of every detail is unnecessary, but a patent specification must disclose enough that the claimed invention can be practiced by one skilled in the art. Assuming, arguendo, that the essence of the invention is the "selective utilizing" method referenced in the asserted claims, Musco must disclose the patented basis on which the skilled artisan can make the selection. To satisfy this requirement, it argues that the selection is made as the result of a mental step, which can be found in previously existing knowledge and technology.
 
 
 10
 If we attempt to preserve the validity of Musco's invention, as a matter of logic we must adopt this proffered "essence" of the invention. The apparatus described in the specifications, whether used individually, severally, or collectively, are not new to the art of lighting sports arenas or to similar arts, such as automobile head lamps. Similarly, as the parties have stated, the means for determining the lighting requirements for a particular sports field were developed prior to the invention claimed in Musco's patents. Thus, to be distinguishable over the prior art, the narrowest "essence" of the invention that can preserve its validity is one that locates the invention in the method of selectively utilizing the apparatus.
 
 
 11
 Unfortunately for Musco, the patent specifications do not enable one skilled in the art to practice this "invention." We can find no answer to Qualite's rhetorical question: "on what basis do I make the selection?" If the selection could be made on the basis of mental steps taught by previously existing knowledge and technology such as photometry and computer programs, as Musco suggests, the lack of enabling language in the specifications would be less troubling in part because the required experimentation would be routine. However, if the selection is made based on a well-known mental step, then there is nothing of the essence of this invention left to save it from being obvious.
 
 
 12
 The existence of mental steps in the claims or specifications of a patent do not, in and of themselves, invalidate the patent. But where, as here, the claimed subject matter--the selective utilization process--is composed solely of mental steps, at the very least, some aspect of these mental steps must be nonobvious, and the specification must describe this same aspect so as to enable the skilled artisan to practice the invention. Musco argues that a description of the mental step is unnecessary because it is well known in the art and can be practiced with only routine experimentation. If this is correct, all subject matter claimed by these patents would be obvious, as suggested by the following cross-examination of Myron Gordin, a named inventor.
 
 
 13
 Q. On what basis? What's the specific scientific basis, if any, for determining how you compose your system from your three accessories?
 
 
 14
 A. There's not a scientific basis that I'm aware of.
 
 
 15
 Q. How do you go about--how does one go about the selection process if the invention is selection of the components and the patent is teaching, what is there in the patent that tells us how to make the selection?
 
 
 16
 A. A person experienced in lighting ... would be able to make a reasonable estimation, you know.
 
 
 17
 If Musco is incorrect and there is something more to the invention than a well-known mental step, the specification provides no guidance for the skilled artisan to follow in order to practice the invention.
 
 
 
 *
 The '303 and '828 patents were issued on continuation-in-part applications related to the '934 patent and disclose the use of additional apparatus in the selective utilization process. The asserted claims in all three patents are method claims