CHIUMINATTA CONCRETE CONCEPTS, INC., Edward Chiuminatta, and Alan R. Chiuminatta (now Soff–Cut International, Inc.), Plaintiffs–Appellees,

v.

CARDINAL INDUSTRIES, INC., Defendant,

and

Green Machine Corporation, Defendant–Appellant.

No. 00–1172.

United States Court of Appeals, Federal Circuit.

Jan. 8, 2001.

Before CLEVENGER, SCHALL, and DYK, Circuit Judges.

CLEVENGER, Circuit Judge.

This appeal arose from a patent infringement suit brought by Chiuminatta Concrete Concepts, Inc., Edward Chiuminatta, and Alan R. Chiuminatta (collectively, "Chiuminatta") against Cardinal Industries, Inc. ("Cardinal") and Green Machine Corporation ("GMC"). Chiuminatta sued the defendants in the Central District of California for infringement of several patents, including U.S. Patent No. 4,889,675 ("the '675 patent") and U.S. Patent No. 5,056,499 ("the '499 patent"). The district court granted summary judgment of infringement in favor of Chiuminatta, holding that Cardinal and GMC infringed the '499 patent and induced infringement of the 675 patent. *Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc.*, No. CV 95–4995 (C.D.Cal. Nov. 8, 1996) ("*Chiuminatta I*").

On appeal, this court upheld the ruling of inducement of infringement of the '675 patent, but overturned the ruling of infringement of the '499 patent. *Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc.*, 145 F.3d 1303, 46 USPQ2d 1752 (Fed.Cir.1998) ("*Chiuminatta II*"). The district court then granted Chiuminatta summary judgment on damages for infringement of the '675 patent. *Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc.*, 1998 WL 766705, 48 USPQ2d 1421 (C.D.Cal.1998) ("*Chiuminatta III*"). Defendants filed a motion for reconsideration pursuant to Federal Rule of Civil Procedure 59(e). Defendants also filed a motion for relief from judgment pursuant to Federal Rule of Civil Procedure 60(b)(6), alleging the gross neglect of counsel due to mental depression. Both motions were denied by the district court. *Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc.*, No. CV 95–4995 (C.D.Cal. Nov.

11, 1998) (denying motion for reconsideration); *Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc.*, 1999 WL 160286, 49 USPQ2d 2005 (C.D.Cal.1999) (denying motion for relief from judgment).

GMC now appeals the district court's grant of summary judgment on damages, as well as the denial of the Rule 59(e) and Rule 60(b)(6) motions. We *affirm* the denial of the Rule 60(b)(6) motion for relief from judgment. However, because we agree that GMC has raised a question of material fact with regard to damages, we *reverse* the district court's grant of summary judgment on damages and *remand* the case for further proceedings consistent with this opinion. The reversal of the summary judgment of damages moots the appeal of the Rule 59(e) motion for reconsideration.

I

Chiuminatta originally filed suit against Cardinal, GMC, and Allen Engineering Corporation ("Allen"). Chiuminatta claimed that the "Green Machine," a concrete cutting saw manufactured by Cardinal and GMC, infringed Chiuminatta's patents. Allen, a distributor of Cardinal, settled with Chiuminatta. After the *Chiuminatta II* decision upheld Cardinal and GMC's liability for inducement of infringement of the '675 patent, both Cardinal and GMC entered bankruptcy proceedings. However, GMC was subsequently dismissed from bankruptcy proceedings, and the *Chiuminatta III* decision granted summary judgment of damages against GMC for inducement of infringement of the '675 patent. The *Chiuminatta III* decision also held GMC liable for Cardinal's damages as a successor in interest.

Chiuminatta is the owner of the '675 patent, which is directed towards a method

for cutting "soft" concrete before it has hardened, or cured, to its well-known rock-like hardness. One element of the method claims specifies the timing of the cutting, as explained in our prior decision in *Chiuminatta II*. Claim 1 is representative:

1. A method of cutting grooves in concrete, comprising the steps of:

finishing an exterior surface of the concrete;

cutting a groove in the surface with a rotating blade having an up-cut rotation and having a cutting edge and sides, the cutting occurring before the concrete has hardened sufficiently to allow cutting by a conventional abrasive concrete saw, while still producing an acceptable surface finish adjacent the cut groove, *the cutting step occurring when the concrete has a hardness such that a 1.125 inch diameter steel rod with a flat end, and weighing about 5.75 pounds, would cause an indentation in the surface of the concrete of about ⅟₃₂ to ½ of an inch when the rod is dropped from a height of about 24 inches above the surface of the concrete;* and

supporting the surface immediately adjacent the sides of the cutting blade within ⅟₁₆ of an inch of the sides of the cutting blade, along a portion of the cutting blade sufficient to prevent damage to the surface as the groove is cut.

'675 patent, col. 18, lines 9–31 (emphasis added).

Thus, in order to infringe the claim, the concrete cutting must occur within a specific concrete hardness range. Unfortunately, there are several different types of measurements commonly used for specifying the hardness of concrete, including pounds per square inch ("psi") and drying or curing time. Soft or fresh concrete is typically referred to as "green" concrete. However, whether the patented hardness range only refers to "green" concrete has not been definitively established.

Our prior decision in *Chiuminatta II* found Cardinal and GMC liable for inducement of infringement: "Cardinal's [Cardinal and GMC's] advertisements concede the ability of the accused saw [the Green Machine] to cut concrete starting at a time period earlier than that claimed in the '675 patent, but they encourage use from that time period onwards and thus encourage use during the claimed hardness range." *Chiuminatta II* at 1312. The Green Machine saw itself does not infringe the method claims. The method claims are only infringed when a purchaser of the product actually uses the Green Machine to cut concrete during the patented timeframe.

■ It is well settled that there can be no inducement of infringement without direct infringement by some party. *Met–Coil Sys. Corp. v. Korners Unlimited, Inc.*, 803 F.2d 684, 687, 231 USPQ 474, 477 (Fed.Cir.1986). Thus, our prior decision in *Chiuminatta II* necessarily found that at least one person directly infringed the '675 patent by using the Green Machine saw during the patented timeframe. However, although a single direct act of infringement is sufficient to satisfy the inducement of infringement analysis, a separate damages analysis must still be performed.

II

■ Chiuminatta claimed that it was entitled to lost profits for each sale of a Green Machine saw. The *Panduit* factors provide a common, although not exclusive, method for demonstrating lost profits in a damage award. *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 197 USPQ 726 (6th Cir.1978). When the patent owner can demonstrate that all four *Panduit* factors are satisfied, "[t]he burden then shifts to the infringer to show

that the inference [that lost profits are the correct measure of damages] is unreasonable for some or all of the lost sales." *Rite–Hite Corp. v. Kelly Co.*, 56 F.3d 1538, 1545, 35 USPQ2d 1065, 1069 (Fed.Cir. 1995) (*en banc*). In the present case, damages are to be assessed for inducement of infringement, instead of direct infringement. However, section 271(b) of title 35 states that "[w]hoever actively induces infringement of a patent shall be liable as an infringer." 35 U.S.C. § 271(b) (1994). Thus, appropriate relief against one inducing infringement may be the same as the relief against a direct infringer.

The district court in *Chiuminatta III* granted summary judgment of damages to Chiuminatta for each Green Machine saw sold by Cardinal and GMC. The district court's grant of summary judgment regarding damages is subject to *de novo* review. *See Conroy v. Reebok Int'l, Ltd.*, 14 F.3d 1570, 1575, 29 USPQ2d 1373, 1377 (Fed.Cir.1994). Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). "Thus, summary judgment may be granted when 'no reasonable jury could return a verdict for the nonmoving party.'" *O.I. Corp. v. Tekmar Co.*, 115 F.3d 1576, 1580, 42 USPQ2d 1777, 1779 (Fed.Cir.1997) (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). When reviewing a motion for summary judgment, the court must draw all reasonable factual inferences in favor of the nonmovant. *See Anderson*, 477 U.S. at 255 (1986).

■ Summary judgment on damages may not be granted if GMC has raised a genuine issue of material fact regarding the appropriateness of an award of lost profits. GMC argues that the *Panduit* lost profits analysis is not appropriate in a situation involving inducement of infringement, where the number of instances of direct infringement have not been sufficiently proven. Specifically, GMC alleges that some sales of the Green Machine saw did not lead to any direct infringement, because the purchasers did not use the saw during the patented timeframe. Thus, they argue that it is incorrect to assess damages for each sale of a Green Machine, absent sufficient proof that each such potentially inducing sale actually led to an act of direct infringement. Appellant urges that before a *Panduit* analysis can be performed, sufficient proof of the relationship of each sale of the Green Machine to an instance of inducement of infringement must be shown. Appellant thus alleges that a material question of fact has been raised regarding whether some or many of the Green Machine saws sold were actually used in a directly infringing manner.

■ A review of the four *Panduit* factors supports the notion that a *Panduit* lost profits analysis presumes a direct relationship between a sale and an infringing act. "The *Panduit* test requires that a patentee establish: (1) demand for the patented product; (2) absence of acceptable non-infringing substitutes; (3) manufacturing and marketing capability to exploit the demand; and (4) the amount of the profit [the patentee] would have made." *Rite–Hite*, 56 F.3d at 1545, 35 USPQ2d at 1069. When this test is satisfied, the patentee has sustained its burden of proving entitlement to lost profits due to the infringing sales. However, if not every sale leads to an instance of infringement, it logically follows that not every lost sale profit should be compensated by the party inducing infringement. Therefore, in cases in which there is a question whether every sale leads to an instance of direct infringement, a patentee must, in

addition to establishing that the four factors of the *Panduit* test are satisfied, establish the connection between sales and direct infringement.

*Standard Havens Prods., Inc. v. Gencor Indus., Inc.*, 953 F.2d 1360, 21 USPQ2d 1321 (Fed.Cir.1991) supports this rationale. The *Standard Havens* case involved a patented method for producing asphalt. Before the district court, the defendant was adjudged to have contributed to and induced infringement of the patent by producing an asphalt plant that when put into production, infringed the patented method. Damages were assessed for each sale of the infringing plant. However, on appeal, a plant sold to a foreign customer was removed from the damages award. This court reasoned that "the sale in the United States of an unclaimed apparatus alone does not make [the defendant] a contributory infringer of the patented method. Moreover, infringement by the foreign customer has not been shown because there is no evidence of the plant's use in the United States. Further, there can be no inducement of infringement or contributory infringement under 35 U.S.C. § 271(b), (c) (1988) in the absence of direct infringement." *Id.* at 1374, 21 USPQ2d at 1332.

The question remains as to whether or not GMC has raised an issue of material fact regarding whether each Green Machine sale led to an instance of direct infringement. During the damages phase of trial, Chiuminatta essentially relied upon the same proofs as had been used to demonstrate inducement of infringement. Specifically, Chiuminatta introduced evidence of several advertisements for the Green Machine that directly compared the capabilities of the Green Machine with Chiuminatta's competing saw. The advertisements generally touted the capability of the Green Machine to cut "green" concrete. Chiuminatta also introduced an Op-

eration and Maintenance Manual for the saw sold by Allen, which specified that the saw was designed for dry cutting of green or semi-cured concrete. This evidence falls short of proof that each sale of a Green Machine saw led to an act of infringement.

In opposition, Cardinal and GMC introduced the declaration of Mr. Zuzelo, the president of GMC. Mr. Zuzelo stated that a range of saw blades, of varying hardness, were sold for use with the Green Machine. The hardest type of blade is most appropriate for cutting very green concrete. However, Mr. Zuzelo stated that the majority of the saw blades sold for use with the Green Machine were of soft or medium hardness, leading him to believe that most of the Green Machine customers used the saw to cut semi-cured, rather than very green concrete. This analysis presumes that semi-cured concrete is outside of the patented hardness range, and suggests substantial noninfringing uses of the Green Machine saw.

Viewing this evidence in the light most favorable to the appellant, we conclude that GMC has raised an issue of material fact as to whether each sale of a Green Machine saw induced the purchaser to directly infringe the patent. We do not imply that Chiuminatta is required to demonstrate a one-to-one correspondence between units sold and directly infringing customers. Proof of inducing infringement or direct infringement may be shown by circumstantial evidence. *See Moleculon Research Corp. v. CBS*, 793 F.2d 1261, 229 USPQ 805 (Fed.Cir.1986). "It is hornbook law that direct evidence of a fact is not necessary. 'Circumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence.'" *Id.* at 1272, 229 USPQ at 813 (*quoting Michalic v. Cleveland Tankers, Inc.*, 364 U.S. 325, 330, 81 S.Ct. 6, 5

L.Ed.2d 20 (1960)). Even so, the record currently is insufficient to support a summary judgment by circumstantial evidence.

## III

Chiuminatta settled with Allen, Cardinal and GMC's distributor. Allen paid Chiuminatta $40,000, and Chiuminatta released Allen, *but no other defendant,* from further liability. The terms of the settlement agreement released Allen from liability under the patents in suit for its sales of Green Machine saws, except for Allen's existing inventory, not to exceed 40 saws. *Chiuminatta III* at 1424, 1427. On appeal to this court, GMC contends that this settlement releases Cardinal and GMC from any damage liability relating to the 40 saws sold under the settlement by Allen. Essentially, GMC argues that Chiuminatta indirectly granted Cardinal and GMC a license to sell 40 Green Machines.

■ It is well settled that "a party releases only those other parties whom he intends to release." *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 401 U.S. 321, 347, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971). Cardinal and GMC are not released from liability by this settlement. Of course, Chiuminatta's damages were appropriately reduced by $40,000 to prevent a double recovery.

## IV

A total of 446 Green Machine saws were sold, 272 under the Cardinal Industries, Inc., name and 174 under GMC's corporate name. GMC was held liable as a successor in interest for the damages attributed to Cardinal.

■ State law governs the doctrine of successor liability. The parties agreed that California law was the same as Pennsylvania law in this area. Thus, this issue was analyzed under the state law of Pennsylvania, which states that generally, a successor entity does not automatically acquire the liabilities of a predecessor. *See Carpenter v. Federal Ins. Co.,* 432 Pa.Super. 111, 637 A.2d 1008 (1994). However, there are recognized exceptions to this rule, such as if the successor corporation is "merely a continuation of the selling corporation." *Carpenter,* 637 A.2d at 1012. "Traditionally, a case has been held within the 'continuation' exception only when there is a common identity of officers, directors and stock between the selling and purchasing corporations, and only one corporation after the transfer." *Dawejko v. Jorgensen Steel Co.,* 290 Pa.Super. 15, 434 A.2d 106, 108 (Pa.Super.Ct.1981).

Chiuminatta submitted proof that Cardinal and GMC shared the same officers, directors, and shareholders (Mr. Zuzelo and his wife performed all these functions for both GMC and Cardinal). Cardinal and GMC sold the same product (the Green Machine) and GMC purchased some of Cardinal's equipment. Mr. Zuzelo testified that he created GMC to make and sell the Green Machine saw since he was in the process of bankrupting Cardinal. However, GMC argues that successor liability requires that the acquiring or successor company be the "alter ego" of the former corporation, and cites *Bostick v. Schall's Brakes and Repairs, Inc.,* 725 A.2d 1232 (Pa.Super.Ct.1999) as standing for this proposition. GMC argues that the "alter ego" test was not satisfied in this case.

GMC's citation to *Bostick* is inapposite. *Bostick* does not hold that the *only* way to prove successor liability is through the "alter ego" test. *Bostick* merely sets forth the test for establishing successor liability via "alter ego," and specifically notes that the Commonwealth of Pennsylvania has upheld related theories of successor liability in products liability and criminal organization cases. *Bostick,* 725 A.2d at 1238.

*Bostick* cannot be read as overruling the long line of cases distinguishing between the "alter ego" test and the "mere continuation" test. There are a variety of different methods of demonstrating successor liability. *See, e.g., Today's Child Learning Ctr. v. United States*, 40 F.Supp.2d 268, 272–74 (E.D.Pa.1998) (spelling out the entirely separate tests for both continuation/de facto merger/successor in interest and alter ego). GMC's arguments relating to the "alter ego" test do not raise an issue of material fact regarding GMC's successor liability for Cardinal's infringement activities. Thus we uphold that portion of the summary judgment of damages holding GMC liable for damages attributable to Cardinal under the patent in suit.

## V

■■■■ Federal Rules of Civil Procedure 60(b)(1) and 60(b)(6) allow a district court to relieve a party from a final judgment for: (1) mistake, inadvertence, surprise, or excusable neglect; or (6) any other reason justifying relief from the operation of the judgment. Fed.R.Civ.P. 60(b)(1) and (6). The denial of a Rule 60(b) motion is a purely procedural question not unique to patent law, and therefore we review the denial under the law of the regional circuit, in this case, the Ninth Circuit. *See Marquip, Inc. v. Fosber Am., Inc.*, 198 F.3d 1363, 1369, 53 USPQ2d 1015, 1020 (Fed.Cir.1999) (*citing Amstar Corp. v. Envirotech Corp.*, 823 F.2d 1538, 1550, 3 USPQ2d 1412, 1421 (Fed.Cir. 1987)). The Ninth Circuit reviews a district court's denial of a Rule 60(b) motion for abuse of discretion. *United States v. State of Washington*, 98 F.3d 1159, 1163 (9th Cir.1996).

GMC seeks relief from judgment based upon the actions of GMC's attorney during the original infringement litigation proceedings. GMC's original attorney, Logan, merged his practice with the law firm of Synnestvedt & Lechner ("S & L") soon after taking the case in January of 1996. GMC contends that Logan began suffering from a severe mental depression around August of 1996, and that this severe mental depression caused him to effectively fail to do sufficient work on the case. GMC argues that this "constructive disappearance" of their counsel entitles it to relief from judgment under Rule 60(b)(6).

■■■■ The Supreme Court has cautioned that Rule 60(b)(6) should only be used in "extraordinary circumstances." *Ackermann v. U.S.*, 340 U.S. 193, 200, 71 S.Ct. 209, 95 L.Ed. 207 (1950). We concur with the district court that the facts alleged do not support a finding of extraordinary circumstances. Attorney Logan, in conjunction with the law firm of S & L, filed all of the necessary motions and responses, and kept the case progressing. By contrast, in the cases cited by the appellants, the counselors either completely failed to make necessary filings or actually disappeared. *See, e.g., United States v. Cirami*, 563 F.2d 26 (2nd Cir.1977) (granting relief where the appellant's lawyer failed to file a motion opposing summary judgment due to mental illness); *Boughner v. Secretary of Health Education and Welfare*, 572 F.2d 976 (3rd Cir.1978) (granting relief for counsel's gross neglect in failing to file opposing documents).

Furthermore, appellant was not represented solely by attorney Logan, but also by several different lawyers from the law firm of S & L. Both Cardinal and GMC have previously shown that S & L's role in their representation was substantial. For instance, in response to a motion by Chiuminatta in the district court asking for sanctions for discovery violations, GMC argued that S & L alone, and not GMC, should be liable for such sanctions. *Chiuminatta Concrete Concepts, Inc. v. Cardi-*

*nal Industries, Inc.,* No. CV 95–4995 (C.D.Cal. Aug. 10, 1998). GMC submitted billing statements detailing that twelve different attorneys and/or paralegals billed to their case, and that attorney Logan accounted for only slightly more than half of the total hours billed by S & L to GMC. *Id.,* slip op. at —— – ——. GMC cannot now contend that Logan alone was responsible for the case.

The grant of summary judgment with respect to the amount of damages is reversed. The case is remanded for further proceedings consistent with this opinion.

No costs.