**IMAGEXPO, L.L.C., Plaintiff,**

v.

**MICROSOFT CORPORATION, Defendant.**

**No. CIV.A. 3:02CV751.**

United States District Court, E.D. Virginia, Richmond Division.

Sept. 23, 2003.

Howard W. Dobbins, Esq., Robert Dean Perrow, Williams Mullen, PC, Richmond, VA, Coke Morgan Stewart, Alan Michael Fisch, Kelly Ambrose Clement, Jason Foster Hoffman, Howrey, Simon, Arnold & White, LLP, John H. Weber, Baker & Hostetler, LLP, Washington, DC, for Plaintiff/Interested Party.

James Crawford Roberts, Alan Durrum Wingfield, Henry Dwight Williams Burt, Troutman Sanders, LLP, Richmond, VA, Michael L. Buckler, Garth A. Winn, Michael Norman Zachary, J. Christopher Carraway, Klarquist Sparkman, LLP, Portland, OR, for Defendant

Jonathan David Frieden, Odin, Feldman & Pittleman, PC, Fairfax, VA, Robert F. Ruyak, Howrey, Simon, Arnold & White, LLP, Washington, DC, for interested parties.

John Harrold Thomas, John H. Thomas, P.C., Richmond, VA, for amicus.

### MEMORANDUM OPINION

**(Microsoft's Motions for Partial Summary Judgment Dismissing Imagexpo's Claim for Contributory Infringement and Limiting Damages to Inducement Measured by Actual Use)**

ELLIS, District Judge.

This matter is before the Court on Microsoft Corporation's ("Microsoft's") Motions for Partial Summary Judgment Dismissing Imagexpo's Claim for Contributory Infringement and Limiting Damages to Inducement Measured by Actual Use. The Court has reviewed the extensive memoranda and accompanying exhibits filed by both sides.

On September 15, 2003, the Court heard oral argument on all of Microsoft's pending motions for partial summary judgment. The Court ruled from the bench as to a majority of the issues, but it took the two above-described motions under advisement. The Court has again reviewed the extensive memoranda of law submitted by the parties, the case law discussed therein, and a transcript of the oral argument. For the reasons stated on the record, and for the reasons that follow, Microsoft's Motions for Partial Summary Judgment Dismissing Imagexpo's Claim for Contributory Infringement and Limiting Damages to Inducement Measured by Actual Use will be denied.

*I. Contributory Infringement Under 35 U.S.C. § 271(c)*

According to the statutory language of 35 U.S.C. § 271(c) (" § 271(c)"):

whoever sells a ... material or apparatus for use in practicing a patented process, constituting a material part of the

invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and *not a staple article or commodity of commerce suitable for substantial noninfringing use,* shall be liable as a contributory infringer.

35 U.S.C. § 271(c) (emphasis added). Thus, § 271(c) liability requires a showing (1) that the device sold was used in practicing a patented process; (2) that the seller knew it was especially made for that purpose; and (3) that the device sold was not a staple or commodity suitable for a substantial noninfringing use. For purposes of this motion only, direct infringement and knowledge are assumed, and Microsoft focuses its summary judgment argument solely on the third requirement of § 271(c), liability for contributory infringement.

In this context, Plaintiff argues that neither of the accused software applications, Buddy Browser or whiteboard, is a staple article or commodity of commerce suitable for any substantial noninfringing use. Microsoft's position, on the other hand, is that the products at issue are not the single applications of Buddy Browser and whiteboard, but rather, MSN 8 and NetMeeting, as suites or packages of software. The MSN 8 suite adds parental controls, a junk e-mail filter, and photo-supporting email software to the accused Buddy Browser function, and the NetMeeting suite adds application sharing, file transfer, and chat features to the accused whiteboard feature. Thus, Microsoft contends, because both MSN 8 and NetMeeting contain non-infringing applications and functions other than Buddy Browser and whiteboard, this Court must find that Microsoft is not and cannot be liable for

contributory infringement because both software packages are capable of substantial noninfringing uses.[1]

Again, assuming *arguendo* that Microsoft is correct in its interpretation of the products at issue, the question becomes whether Microsoft's addition of non-accused functions to either of the software suites transforms that suite, making it capable of a substantial, noninfringing use. This, like all questions of non-infringement, is a factual determination. *See Moleculon Research Corp. v. CBS, Inc.,* 793 F.2d 1261, 1269–70 (Fed.Cir.1986).

The Court must determine whether contributory infringement exists by applying the statutory language of § 271(c) to the specific facts of this case. As one court has noted, however, "[s]ection 271(c) covers a lot of ground, and the cases which interpret it are relatively few in number. One is left with the conclusion that the fact variations which may invoke § 271(c) are infinite and that standards derived from a specific fact situation are necessarily suspect in other circumstances." *Oak Industries, Inc. v. Zenith Electronics Corp.,* 697 F.Supp. 988, 995 (N.D.Ill.1988).

In the final analysis, each of the Microsoft software packages at issue combines a number of functions, one of which, it is assumed for purposes of this motion, would require the software user to practice Plaintiff's patented method. Can Microsoft escape liability for contributory infringement by combining additional software applications with the patented applications and calling the result a "staple article or commodity of commerce suitable for substantial noninfringing use?" In this Court's opinion, the an-

---

1. At this juncture, the Court need not decide whether to evaluate only the specific accused functions, as Plaintiff advocates, or to evaluate the suites, as Microsoft advocates. As will become obvious, even assuming, *arguendo,*

that Microsoft is correct in its interpretation, whether the product has substantial noninfringing uses is a material question of disputed fact.

swer to this question hinges on issues of fact.

Although this is a technologically complex, fact-specific inquiry, in making its analysis the court found helpful, by analogy, the court's reasoning in *Oak Industries*. In the *Oak Industries* case, the litigation focused on a method used in a cable converter box to eliminate interference from particular cable channels. *Oak Indus.*, 697 F.Supp. at 988. As is true in the immediate case, in its complaint, the plaintiff charged the defendant with both inducement and contributory infringement of its method patent. *Id.* at 989.

In a motion for summary judgment, the defendant in *Oak Industries* urged the trial court to find, as Microsoft does here, that it could not be liable for contributory infringement as a matter of law. *Id.* at 990. In support of its motion, Defendant Zenith argued that because its primary accused device enabled the practice of not only the method patent in question, but also of a method for expanding the number of available channels, a method for unscrambling protected signals, and a method for operating and responding to individual subscriber homes, its converters were capable of substantial noninfringing uses. *Id.*

The trial court disagreed, saying:

Additional functions in a device that practices a patented method does not diminish direct infringement and, therefore, the fact that the device sold has other functions which are performed simultaneously with the patented method does not otherwise substantiate a noninfringing use for the purposes of § 271(c). This rule flows directly from the logic of the patent laws. To hold to the contrary would allow sellers of products that are clearly intended to infringe a patented method to avert liability simply by adding functions to that device.

*Oak Indus.*, 697 F.Supp. at 995. Moreover, in evaluating the substantial noninfringing use question, the court concluded that whether the device or product was, "in effect, a combination of separable functions in a single package, one of which leads to infringement, or a device [or product] designed for other purposes which, because of the limits of technology, necessarily and incidentally permits the practice of the patented method if those other purposes are to be accomplished" was a question of fact for the jury to decide. *Id.* at 996.

The same is true in the immediate case. One question the Court finds unanswered, here, is whether and how intricately each software package combines the patented method with additional software applications? Are the Microsoft software suites a combination of separable functions, or is each suite designed such that, due to the limits of technology, each necessarily and incidentally practices the patented method in order to accomplish its purpose? Stated another way, even if Microsoft made every effort to remove Buddy Browser and whiteboard from its software suites, would the remaining technology, used to practice the other functions in MSN8 and NetMeeting, nevertheless permit a user to practice the patented method? These are disputed questions of material fact that the Court finds relevant to the question of substantial noninfringing use. It cannot properly be resolved on summary judgment. Consequently, Microsoft's motion is denied.

## II. Limiting Damages to Actual Use

In this inartfully-styled summary judgment motion, which Microsoft entitles "Motion for Partial Summary Judgment Limiting Damages to Inducement Measured by Actual Use," Microsoft argues that Imagexpo cannot recover damages or royalties for *any* form of indirect infringe-

ment, under either 35 U.S.C. § 271(b) (inducement) or 35 U.S.C. § 271(c) (contributory infringement), for those units[2] of MSN8 and NetMeeting that were distributed but have not yet been "used." In support of its motion, Microsoft argues that if no end user has yet employed a particular unit of MSN8 or NetMeeting, that unit has not caused any direct infringement on the patented method; thus, there can be no indirect infringement to form a basis for § 271 liability. Consequently, as a matter of law, Microsoft contends that it cannot be held liable for any existing unit of MSN8 and NetMeeting that has never been employed by a user.

In opposition, Imagexpo argues that because the bases for liability on indirect infringement are different from those underlying direct infringement, the remedies are separate and distinct. In support of its position, Imagexpo posits that "evidence that the contributing or inducing party intended that the accused product or component be used in an infringing manner is sufficient" to show liability under 35 U.S.C. § 271(b) & (c).

In patent jurisprudence, the settled rule of damages provides that upon a finding of infringement, "the court shall award damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for *use made of the invention by the infringer*" along with interest and costs. 35 U.S.C. § 284 (emphasis added). In Imagexpo's opinion, this means that, upon proof of infringement, it is entitled to a reasonable royalty for *Microsoft's* use of the patent. Microsoft, on the contrary, argues that on Imagexpo's

claims of indirect infringement, the infringer is not Microsoft but the end user. Thus, Microsoft contends, damages for indirect infringement are limited to those distributed units on which a third party was induced to act. Accordingly, the controlling question is whether, upon proof of all of the elements of indirect infringement, Imagexpo is entitled to a reasonable royalty based on all units of MSN8 and NetMeeting that have been distributed by Microsoft or only on those distributed units that Imagexpo can prove actually have been employed by an end user, as the induced infringer.

■ "[I]f not every sale leads to an instance of infringement, it logically follows that not every lost sale profit should be compensated by the party inducing infringement. Therefore, in cases in which there is a question whether every sale leads to an instance of direct infringement, a patentee must ... establish the connection between sales and direct infringement." *Chiuminatta Concrete Concepts, Inc. v. Cardinal Industries, Inc.*, 1 Fed. Appx. 879, 883–84, 2001 WL 21304 (Fed. Cir.2001).[3] However, the plaintiff is not required to demonstrate a one-to-one correspondence between units sold and directly infringing customers. *Id.* at 884. "Proof of inducing infringement or direct infringement may be shown by circumstantial evidence." *Id.See also Hilgraeve, Inc. v. Symantec Corp.*, 272 F.Supp.2d 613, 620–21 (E.D.Mich.2003).

Thus, it is this Court's opinion that although the burden is on Imagexpo to show a correlation between those units of MSN8

---

**2.** The Court uses the word "unit," in this context, just as the parties did in oral argument. The Court is aware that, taken literally, any single "unit" of MSN8 or NetMeeting sold may include a licensing agreement that allows for multiple end users to employ the applications included in that particular software package.

**3.** Although, as an unpublished opinion, *Chiuminatta* is not binding precedent, this Court finds the logic and analysis used by the Federal Circuit Court of Appeals therein to be equally applicable in the context of the immediate motion.

370

and NetMeeting that Microsoft has distributed and those through which it has actually induced an end user to employ an infringing application, Imagexpo may do so by circumstantial evidence. This proof need not necessarily be one-to-one, but it may be extrapolated from otherwise-reliable and competent evidence. Whether Imagexpo's proof is capable of establishing damages for indirect infringement for every unit of MSN8 and NetMeeting Microsoft has distributed, however, is a question for the trier of fact, not this Court. Consequently, Microsoft's Motion for Partial Summary Judgment Limiting Damages to Inducement Measured by Actual Use is granted in part and denied in part.

An appropriate Order will accompany this memorandum opinion.